IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE APPLICATION FOR AT&T
NON-DISCLOSURE ORDER            Case No. 25-MR-1769 SCY

## MEMORANDUM OPINION AND ORDER DENYING APPLICATIONS FOR ORDER DIRECTING AT&T NOT TO NOTIFY ANY PERSON OF EXISTENCE OF GRAND JURY SUBPOENAS

As part of a criminal investigation, the United States has identified two telephone numbers about which it seeks information from AT&T.[1] For each telephone number, the United States drafted a federal grand jury subpoena seeking from AT&T "ANY AND ALL RECORDS IN YOUR POSSESSION, CUSTODY OR CONTROL INCLUDING, BUT NOT LIMITED TO . . . ." To prevent AT&T from disclosing the existence of these grand jury subpoenas, the United States, under authority of the Stored Communication Act ("SCA"; 18 U.S.C. § 2701 et seq.), moved the Court to issue orders forbidding AT&T from notifying any person, including its customers, about the existence of the grand jury subpoenas. After the Court rejected the United States' non-disclosure order ("NDO") applications, the United States submitted revised NDO applications with grand jury subpoenas that continued to demand unlimited information about the accounts from AT&T. This Order considers the NDO applications the United States submitted in connection with the above-described grand jury subpoenas.

---

[1] Because the United States' investigation is not public and Rule 6 of the Federal Rules of Criminal Procedure, with few exceptions, requires federal grand jury investigations to be kept secret, the Court does not identity the phone numbers at issue. Because the grand jury regularly issues subpoenas to telephone providers such as AT&T, however, noting that the United States sought production from AT&T does not reveal confidential grand jury information.

When a grand jury subpoena seeks more than limited subscriber information, the United States must go through several steps to obtain an NDO. In contrast, when the United States seeks only limited subscriber information about the account being investigated, the path for the United States to obtain an NDO is much easier. Here, the United States did not take the steps necessary to obtain an NDO in connection with a grand jury subpoena that seeks more than limited subscriber information. And, because the present applications seek more than limited subscriber information, the easier path to an NDO is unavailable. Consequently, the Court must deny the United States' NDO applications.

## BACKGROUND

In this District, the United States frequently prepares grand jury subpoenas directed to electronic communication service providers ("ECSPs") (e.g., AT&T, Verizon, Meta, and Google) that seek all information related to a named person or account. Because allowing the ECSPs to notify their customers about the existence of the grand jury subpoenas would seriously jeopardize the United States' investigations, the United States routinely seeks to have the Court order the ECSPs not to disclose the existence of the grand jury subpoenas. When the grand jury subpoenas seek more than the limited subscriber information described in 18 U.S.C. § 2703(c)(2) and the United States does not proceed under 18 U.S.C. § 2703(b)(1), the undersigned has rejected these NDO applications. In a sealed memorandum opinion and order issued on October 6, 2020, the Court explained its reasons for rejecting such applications. The Court now explains its reasons for rejecting such applications in an unsealed Order that can be more easily dispersed and considered.

The United States submitted the first two NDO applications at issue in this case on Friday, October 3, 2025. Attached to each application was a grand jury subpoena to AT&T,

describing the information AT&T must provide as follows: "THE SUBPOENA IS FOR ANY AND ALL RECORDS IN YOUR POSSESSION, CUSTODY OR CONTROL INCLUDING, BUT NOT LIMITED TO Account information and records" from a specific range of dates for a specific telephone number. The subpoenas then continue, "All account information includes, but is not limited to, the following: 1. Phone numbers of callers and unknown callers 2. Identification information of callers". The Court rejected the applications and the Clerk's Office informed the United States that it did so because, "The subpoena 'includes, but is not limited to' the enumerated items." The Clerk's Office further informed the United States that it could correct this issue and resubmit the applications.

  The United States resubmitted an application for an NDO in connection with one of the telephone numbers on October 14, 2025. The resubmitted application included a revised grand jury subpoena that generally asks for "information" related to the phone number being investigated, and then states: "Account information includes, but is not limited to, the following: 1. Phone numbers of callers and unknown callers 2. Identification information of callers". That is, the grand jury subpoena attached to the resubmitted application no longer contains the capitalized "ANY AND ALL RECORDS" language and removes the word "All" that preceded the phrase, "account information includes, but is not limited to, the following . . . ." However, it still contains the same "includes, but is not limited to" language that the Clerk's Office had informed the United States was unacceptable. Having already informed the United States that it would not accept the language the United States resubmitted, the Court set the matter for a hearing on October 17, 2025. That same afternoon, the United States submitted a third application for an NDO. This third application is for the second telephone number contained in the United States' original submission. Except for the phone number being investigated, the

grand jury subpoena attached to this third application mirrors the language contained in the second application.

At the October 17, 2025 hearing, the United States asserted that when it resubmitted the non-disclosure applications it had intended to remove the "includes, but is not limited to" language from the grand jury subpoenas. The United States refused to concede, however, that, as a matter of law, the failure to limit the information requested in the grand jury subpoena to that covered in § 2703(c)(2) prevented the Court from issuing an NDO. When the Court asked the United States to present any argument it had that the Court could issue a NDO in connection with a grand jury subpoena that did not limit the information requested, the United States declined to present any argument.

## LEGAL STANDARD

The Electronic Communications Privacy Act of 1986 ("ECPA") broadly governs several types of electronic communications. Title I regulates wiretaps (shorthand for real-time interception of the contents of wire, oral, or electronic communications, *see* 18 U.S.C. § 2510) by requiring extensive criteria be met before obtaining a court-authorized wiretap. *See* 18 U.S.C. § 2518. Title III regulates pen registers and trap and trace devices, which record outgoing and incoming phone information. 18 U.S.C. § 3127. Relevant to the present analysis is Title II of the ECPA—frequently referred to as the Stored Communications Act,[2] 18 U.S.C. §§ 2701-13.

United States Magistrate Judge William B. Porter recently provided a summary of the history and purpose of the SCA, which the Court now adopts, beginning with the structure of the SCA:

---

[2] The full title of this chapter is "Stored Wire and Electronic Communications and Transactional Records Access."

The Stored Communications Act ("SCA"), enacted as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA"), protects the privacy of stored electronic files held by providers about their users, customers, and subscribers; outlines how the government may access this data; and in some cases requires the government to notify a subscriber that it has requested their information. *See* 18 U.S.C. §§ 2701-2713. Within the SCA, Section 2703 regulates the different ways the government can obtain from a subscriber's electronic communications and other information, as well as the different levels of privacy protection afforded the subscriber, depending on the type of information requested by the government (i.e., content or non-content), and how the government chooses to request it (e.g., warrant, court order, or subpoena). 18 U.S.C. § 2703(a)-(c).

The government may obtain the *content* of a subscriber's communications from a provider using a warrant, an administrative subpoena, a grand jury subpoena, a trial subpoena, or a court order, but only if the government follows the procedures and notice requirements outlined in Section 2703(b)(1). *See* 18 U.S.C. § 2703(b)(1)(A)–(B). If the government uses a subpoena or a court order to obtain the content of communications, it must provide prior notice to the subscriber, although this notice to the subscriber may be delayed for no more than 90 days. *See* 18 U.S.C. §§ 2703(b)(1)(B) and 2705(a)(1)(A) and (B). If the government uses a warrant to obtain the content of a subscriber's communications, it need not provide any notice to the subscriber. 18 U.S.C. § 2703(b)(1)(A).

If, as here, the government requests *non-content* "record[s] or other information pertaining to a subscriber" ("Subscriber Information"), it must follow the procedures outlined in Section 2703(c)(1). Like Section 2703(b)(1), the scope of the non-content records the government may obtain from a provider about a subscriber depends on the discovery device used and the showing the government must make to obtain it. If the government wants all non-content Subscriber Information, it must either (1) obtain a warrant from the court based on a showing of probable cause as required by Rule 41 of the Federal Rules of Criminal Procedure, (2) obtain a court order based on a showing of specific and articulable facts that the Subscriber Information is relevant and material to an ongoing criminal investigation under 18 U.S.C. § 2703(d), or (3) obtain the consent of the provider's subscriber. 18 U.S.C. § 2703(c)(1)(A)-(C).

Section 2703(c)(1) also allows the government to issue an administrative or grand jury subpoena (collectively, "subpoena"). While the government can issue a subpoena to a provider without any prior court review or approval, the statute restricts the information the government can obtain about a subscriber to a smaller subcategory of non-content Subscriber Information, often referred to as "Basic Subscriber Information." *See United States v. Taylor*, 54 F.4th 795, 804 (4th Cir. 2022). Specifically, Section 2703(c)(1)(E) and (c)(2) allow the government to obtain with a subpoena only the following Basic Subscriber Information about a subscriber:

5

> (A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of services utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (F) means and source of payment for such service (including any credit card or bank account number).

18 U.S.C. § 2703(c)(2).

Unlike a request for content information under Section 2703(b)(1), the government has no obligation to notify a subscriber that it has requested this non-content Subscriber or Basic Subscriber Information. 18 U.S.C. § 2703(c)(3) ("A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer.").

In sum, Section 2703 creates a sliding scale that balances the type of information the government can obtain, the showing the government must make to obtain it, the subscriber's privacy rights to the information, and the notice (if any) that must be provided by the government to the subscriber.

Regardless of any obligation the SCA imposes on the government to notify a subscriber that the government has requested their electronic information, providers often contractually obligate themselves—or voluntarily assume the obligation—to notify their subscribers that the government has requested their information. And it does not matter if the government requested the subscriber's information with a grand jury subpoena because Rule 6(e)(2) of the Federal Rules of Criminal Procedure imposes no duty of secrecy on the recipient of a grand jury subpoena. *See* Fed. R. Crim. P. 6(e)(2) ("No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)," and the recipient of a grand jury subpoena is not one of them.).

Limiting the discussion here to the government's ability to prevent a provider from notifying its subscriber that the government has issued a subpoena for the subscriber's Basic Subscriber Information, 18 U.S.C. § 2705(b) allows the government to ask the court to issue an NDO to a provider if the government can show that disclosure to the subscriber will result in an adverse result. As applied here, Section 2705(b) states as follows:

> (b) PRECLUSION OF NOTICE TO SUBJECT OF GOVERNMENTAL ACCESS. —A governmental entity *acting under section 2703*, ... may apply to a court for an order commanding a [provider] to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it

> determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in [adverse results].

18 U.S.C. 2705(b) (emphasis added).

Therefore, if the government has no obligation to provide notice to a subscriber about a subpoena but believes that some adverse result will occur if a provider tells its subscriber about the subpoena, the government may ask the court to enter an NDO that prohibits the provider from notifying its subscriber about the subpoena.

. . .

As discussed above, Section 2703 creates a sliding scale that balances the type of information the government can obtain, the required showing that must be made for each discovery device, the subscriber's privacy rights, and the notice (if any) that must be provided by the government to the subscriber. *See supra* Section I.B. Therefore, as a condition to ask the court for an NDO, the government must engage in discovery permitted by Section 2703.

If the government wants non-content Subscriber Information, it must either (1) obtain a warrant from the court as required by Rule 41 of the Federal Rules of Criminal Procedure based on a showing of probable cause, (2) obtain a court order under 18 U.S.C. § 2703(d) based on a showing of specific and articulable facts that the Subscriber Information is relevant and material to an ongoing criminal investigation, or (3) obtain the subscriber's consent. 18 U.S.C. § 2703(c)(1)(A)-(C). If the government wants to use a subpoena to obtain non-content Subscriber Information about a subscriber, the government must either have the subscriber's consent, 18 U.S.C. § 2703(b)(1)(B)(i), or it must limit its request to the Basic Subscriber Information permitted by Section 2703(c)(2). Without satisfying one of the above requirements, the government is not "acting under Section 2703," and a magistrate judge must not enter an NDO authorized by Section 2705(b).

If, for example, the government issues a grand jury subpoena to a provider demanding the content of a subscriber's communications without the subscriber's consent—information that may be obtained only with a warrant—the Court is not obligated to enter an NDO prohibiting the provider from disclosing the existence of the subpoena to the subscriber simply because the government has made a factual showing of a possible adverse result. Why? Because in such a hypothetical situation, the government is not "acting under section 2703" as that statute does not allow the government to obtain content information with a subpoena without the subscriber's consent, and thus a magistrate judge must not enter such an NDO to the provider. *See* 18 U.S.C. §§ 2703(b)(1)(B)(i) and 2703(c)(1)(C).

> Similarly, if the government wants to obtain non-content information about a subscriber with a subpoena and without the subscriber's consent, and the government also wants to prohibit the provider from notifying its subscriber about the subpoena—to be "acting under section 2703," and thus eligible for an NDO—the government must limit its request to the Basic Subscriber Information specifically permitted by Section 2703(c)(2). *See* 18 U.S.C. §§ 2703(c)(1)(C) and (c)(2).
>
> None of this is to say that the Court can prevent the government from issuing grand jury subpoenas as it sees fit (and at its own peril). But when the government asks the Court to enter an NDO authorized by Section 2705(d), its request for discovery must comply with Section 2703. In this way, Congress has seen fit to vest the Court with the authority to ensure that the government's request complies with the law.

*In re Application of the United States of Am.*, No. 1:25-DM-4 (WBP), 2025 WL 1140446, at *2–4 (E.D. Va. Apr. 9, 2025) (footnotes omitted).

That limited circumstances exist under which the Court is empowered to issue NDOs in connection with grand jury subpoenas is consistent with the history of the SCA. As Judge Porter explained:

> Congress created the Stored Communications Act in response to "tremendous advances in telecommunications and computer technologies," which led to technological advances in surveillance. S. Rep. 99-541, at 3 (1986). Congress was concerned that technological advances in surveillance could lead to overzealous law enforcement agencies obtaining personal and business information that they were not privy to before. *See id.* Created in the aftermath of *United States v. Miller*, 425 U.S. 435 (1976)—where the Supreme Court held that a bank customer lacked standing to contest the disclosure of his bank records to the government—Congress sought to protect third party information kept on computers because "computers are used extensively . . . for the storage and processing of information." S. Rep. 99-541, at 3 (1986).
>
> Prior to the 1994 Amendments to the SCA, Congress did not distinguish between Basic Subscriber Information and other information relating to a subscriber. *Id.* Rather, law enforcement was allowed to use an administrative or grand jury subpoena to generally obtain "information pertaining to subscriber or customer, but not the contents of any communications of that customer." *Id.*
>
> By the 1990s, Congress recognized that, "in the eight years since the enactment of the [Electronic Communications Privacy Act], society's patterns of using electronic communications technologies ha[d] changed drastically." H.R. Rep.

103-827, at 17 (1994). Because individuals maintained "a wide range of relationships" online, Congress decided that *transactional data*—such as email addresses and websites visited—that document an individual's online activities and associations reveals a great deal of information about an online-user's private life, and Congress did not want law enforcement to obtain this type of transactional data with simply a subpoena. *See id.* Thus, to "guard against 'fishing expeditions' by law enforcement," Congress amended the SCA in 1994 to, among other things, distinguish between Basic Subscriber Information, which could be obtained using a subpoena, and "other information pertaining to a subscriber"— including non-content, transactional data—which required a court order. H.R. Rep. 103-827, at 10 and 17 (1994) ("In addition, the bill increases the protection for transactional data on electronic communications services by requiring law enforcement to obtain a court order for access to electronic mail addressing information.").

The SCA now itemizes in 18 U.S.C. § 2703(c)(2) the Basic Subscriber Information that law enforcement can obtain from a provider with a subpoena. Basic subscriber records include a customer's name and address; telephone call records, including the time and duration of calls; length of service including the start date for the account and types of service provided; telephone number or other subscriber number or identity, including temporarily assigned network addresses; and method of payment, including credit card or bank account numbers. 18 U.S.C. § 2703(c)(2). Basic Subscriber Information does not include a customer's transactional data, such as addresses of websites visited by the customer and email addresses of other individuals with whom the account holder has corresponded.

Today, the broader term "other information pertaining to a subscriber," 18 U.S.C. § 2703(c), includes transactional records, such as logs recording account usage, the email addresses of individuals with whom the customer has corresponded, and the websites a customer has visited, and this information may be obtained only by a court order after showing "specific and articulable facts showing that there are reasonable grounds to believed" that the records requested are "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

*In re Application of the United States of Am.*, 2025 WL 1140446, at *5–6.

## ANALYSIS

In the grand jury subpoenas at issue here, the scope of information the government seeks is unlimited. The first applications the United States submitted attached grand jury subpoenas that sought "ANY AND ALL RECORDS IN YOUR POSSESSION, CUSTODY OR CONTROL INCLUDING, BUT NOT LIMITED TO . . ." The subpoenas further stated that, "All account

9

information includes, but is not limited to, the following . . ." The second and third applications attached grand jury subpoenas that removed the "ANY AND ALL RECORDS" language. The revised grand jury subpoenas, however, kept the "account information includes, but is not limited to" language.

To the extent text messages, recordings, or other contents of wire or electronic communications related to the accounts being investigated are in the possession of AT&T, such material seems to constitute "information" in AT&T's possession. Similarly, to the extent transactional records that exceed the limited subscriber information described in § 2703(c)(2) (such as logs recording account usage and the email addresses of individuals with whom the customer has corresponded) are in the possession of AT&T, such material seems to constitute "information" in AT&T's possession. As such, the grand jury subpoenas appear to seek the contents of wire or electronic communications and other information pertaining to the subscriber that is not described in § 2703(c)(2).

In its applications to order AT&T not to disclose the existence of these subpoenas, the United States asserts that, "Pursuant to 18 U.S.C § 2703, the United States obtained the attached subpoena, which requires AT&T to disclose certain records and information to the United States. This Court has authority under 18 U.S.C. § 2705(b) to issue 'an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order.'" Application at 1. Although the United States does not identify the specific subdivision of § 2703 under which it is proceeding, only two provisions in § 2703 relate to grand jury subpoenas. The Court addresses both in turn.

1. <u>The United States did not provide prior notice to the account holder of its demand for information, did not seek delayed notification of this notice requirement, and did not provide a written certification from a supervisory official; therefore, 18 U.S.C. § 2703(b)(1) is not applicable.</u>

Because the grand jury subpoenas at issue appear to demand the production of the content of wire or electronic communications in AT&T's possession, the Court begins its analysis with the subsection of § 2703 that governs grand jury subpoenas that seek content information— § 2703(b)(1). As noted above, § 2703(b)(1)(B) allows the United States to obtain content information through a grand jury subpoena, but only "with prior notice from the governmental entity to the subscriber or customer . . . ." 18 U.S.C. § 2703(b)(1)(B). Here, however, the United States clearly does not want the subscriber of the telephone number being investigated to know about the investigation. Indeed, in its NDO application, the United States represents that "that there is reason to believe that notification of the existence of the attached subpoena will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, or change patterns of behavior." Application at 1 (citing 18 U.S.C. § 2705(b)).

Although prior notice is required when the United States seeks information about a subscriber of an electronic communication service under § 2703(b)(1)(B), § 2705(a)(1)(B) provides an exception to this rule. Under 18 U.S.C. § 2705(a)(1)(B), the United States could delay such notification "for a period not to exceed ninety days upon the execution of a written certification of a supervisory official that there is reason to believe that the notification of the existence of the subpoena may have an adverse result described in paragraph (2) of this section." Among those adverse results is what the government has alleged here: a reason to believe that notification of the existence of the subpoena will lead to flight from prosecution, seriously jeopardize the investigation, or unduly delay trial. *See* 18 U.S.C. § 2705(a)(2)(B) & (E).

Obtaining a delayed notification order can have a cascading effect which enables the United States to obtain an NDO to the ECSP. Under 18 U.S.C. § 2705(b), "A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent it may delay such notice pursuant to subsection a of this section, may apply to a court for an order commanding a provider of electronic communications service . . . not to notify any other person of the existence of the . . . subpoena . . . ." In other words, when the United States is not required to provide prior notice to the subscriber of the telephone number being investigated because it obtained court authorization for delayed notice, the United States can also obtain an NDO forbidding the ECSP from notifying the subscriber about the investigation. *See Matter of Subpoena 2018R00776*, 947 F.3d 148, 153 (3d Cir. 2020) ("The SCA thus permits the government to apply for an NDO when it seeks content or non-content data pursuant to § 2703 unless the government itself is required to notify the subscriber of the request. Even when the government must notify the subscriber, it may still obtain an NDO if it may delay notification pursuant to § 2705(a).") (footnotes and citations omitted).

Thus, a legal mechanism exists for the United States to both seek more than limited subscriber information through a grand jury subpoena and to obtain an NDO. Here, however, the United States' application does not indicate that it is seeking to delay for ninety days any notice it might be required to give the subscriber. And, when asked at the hearing to justify its NDO applications in light of the grand jury subpoenas' broad demand for information, the United States did not assert that it was proceeding under § 2703(b)(1). This indicates that the United States is not intending to proceed under the grand jury subpoena provisions contained in § 2703(b)(1).

Further, although the United States' application, which is signed by an Assistant United States Attorney, asserts there is reason to believe that notification of the existence of the subpoena would have one of the adverse results listed in § 2705(a)(2), there is no written certification of a supervisory official. *See* 18 U.S.C. § 2705(a)(6) (defining "supervisory official" as "the investigative agent in charge or assistant investigative agent in charge or an equivalent of an investigating agency's headquarters or regional office, or the chief prosecuting attorney or the first assistant prosecuting attorney or an equivalent of a prosecuting attorney's headquarters or regional office."). Consequently, the Court does not read the United States' reference to § 2703 as invoking § 2703(b)(1)(B).[3]

2. The breadth of information demanded in the grand jury subpoenas is outside the scope of 18 U.S.C. § 2703(c)(2); therefore, § 2703(c)(2) cannot serve as the foundation for an NDO.

As set forth above, when a grand jury issues a subpoena to obtain limited subscriber information as provided in § 2703(c)(2), the United States may also obtain an NDO under § 2705. As further noted above, however, the scope of information the government seeks through the grand jury subpoenas at issue here is much broader than the scope of information covered in § 2703(c)(2). The first applications the United States submitted sought "ANY AND ALL RECORDS IN YOUR POSSESSION, CUSTODY OR CONTROL INCLUDING, BUT NOT LIMITED TO . . ." They further stated that, "All account information includes, but is not limited to, the following . . ." Although the second and third applications attached grand jury subpoenas

---

[3] Because the Court does not read the United States' application as attempting to proceed under 18 U.S.C. § 2703(b)(1)(B), the Court has no occasion to address the constitutionality of this provision. *Cf. United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) ("The government may not compel a commercial ISP to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause. Therefore, because they did not obtain a warrant, the government agents violated the Fourth Amendment when they obtained the contents of Warshak's emails. Moreover, to the extent that the SCA purports to permit the government to obtain such emails warrantlessly, the SCA is unconstitutional.").

that removed the "ANY AND ALL RECORDS" language, the revised grand jury subpoenas kept the "account information includes, but is not limited to" language.

Although this "ANY AND ALL RECORDS" and "account information includes, but is not limited to" language makes clear that the grand jury subpoenas at issue demand more than limited subscriber information covered by § 2703(c)(2), even if the subpoenas did not contain this language, the Court would have to reject the NDO applications. That is, even if the subpoenas simply demanded "information" related to the telephone numbers being investigated, the SCA would not empower the Court to grant the United States' NDO applications. This is because the word "information" is not self-limiting. To the contrary, it would be unnatural to read a generic demand for "information" about an account as demanding only limited subscriber information.

Consequently, to obtain an NDO in connection with a grand jury subpoena issued under § 2703(c)(2), the subpoena must explicitly limit the information requested to what is allowed under § 2703(c)(2). Because each of the federal grand jury subpoenas at issue here seek information beyond the scope described in § 2703(c)(2), § 2705(b)—the authority on which the United States relies for the NDOs it seeks—does not permit the Court to grant the United States' NDO applications.

For these reasons, the Court rejects the United States' October 3, 2025 and October 14, 2025 applications for NDOs related to grand jury subpoenas to AT&T.

**IT IS SO ORDERED.**

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

14